# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-cr-30018-DJC |
| | ) | |
| CARLOS MALDONADO, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT

The United States respectfully recommends that the Court sentence Carlos Maldonado (the "defendant") to a term of imprisonment of 84 months followed by three years of supervised release, to be served consecutive to the sentence that the defendant is presently serving. The recommended sentence represents a within-guideline sentence if the Court determines that the defendant is a Career Offender – a determination the government believes is the correct application of the law. Further, an 84-month term of imprisonment reflects the sentencing factors enumerated in 18 U.S.C. § 3553, and is sufficient but not greater than necessary to reflect the seriousness of the offense, to provide just punishment for the defendant's conduct, to promote respect for the law and afford adequate deterrence to criminal conduct, and to protect the public from the defendant's future violence.

### A. The nature and circumstances of the offense

On March 12, 2018, the defendant wrote and mailed a letter to the Assistant United States Attorney ("AUSA") Todd Newhouse. In that letter, the defendant threatened – in no uncertain terms – to murder AUSA Newhouse solely because AUSA Newhouse had performed his responsibilities in prosecuting the defendant for his repeated criminal acts. In the defendant's warped world-view, by charging him for selling cocaine while out on supervised release for

federal drug charges, AUSA Newhouse was responsible for "destroying [his] life." The defendant threatened AUSA Newhouse that "I am going to make you pay for this," and wrote that he wanted to see AUSA Newhouse dead. As evidence of his pure vitriol, the defendant labeled AUSA Newhouse a "human scum, racist Red neck, a family destroyer, asshole faggot, motherfucker."

Those threats, alone, would have been of great concern and worthy of a considerable sentence. However, the defendant crossed the Rubicon and targeted what any humane person understands is sacred ground. The defendant threatened to murder AUSA Newhouse's family in the most violent manner possible – and cruelly used the tragic death of AUSA Newhouse's mother to hammer home that intent.[1] The defendant wrote, "I want to see you and your whole family dead but all dead in a violent way, like your whore mother died in a lot of pain." He insisted that "the rest of my life I will dedicate to destroying your entire family." Finally, the defendant penned, "I hope that when you think of your mother you only think of all the pain she endured and how much she suffered when they killed her. Your entire family is going to die the same way or worse than your whore mother may she burn in hell."

The defendant's threat to murder AUSA Newhouse and his family cannot be viewed as the offensive – yet harmless – rants of an angry man, isolated and secured in a Wyatt jail cell. What is most disturbing and frightening about the defendant's threats are (1) the defendant's repeated acts of extreme violence, described below, that are wholly consistent with his threats to murder AUSA Newhouse and his family and (2) the resources – in the form of gang member

---

[1] AUSA Newhouse's mother was a crossing guard in West Springfield, Massachusetts. In December 2014, a motorist struck and killed her while she was working in that capacity.

family and associates outside the prison system – that the defendant seemingly has to carry out those threats even while he is in custody.

B.     **The history and characteristics of the defendant**

The defendant was and continues to be a member of La Familia street gang. By his own admission, the defendant became a gang member in Holyoke, Massachusetts prior to 2006, before he turned 18 years old. Since that time, the defendant's gang membership has been anything but passive. His participation in gang related violent activities has been significant, both in the community and while incarcerated.

In 2006, the defendant was arrested for and later convicted of armed assault with intent to murder, after he and two others fired a gun five times at the two intended victims. *Commonwealth v. Maldonado*, 77 Mass. App. Ct. 1102 (Mass. App. Ct. 2010). Based upon the newspaper article referenced in the Presentence Report ("PSR"), the attempted murder by the defendant and two cohorts was a "hit" on members of a rival gang. PSR at ¶59.

Although the defendant claims that he withdrew from membership in the gang when he was released from custody in 2013, the defendant remained friends with many gang members and several members of his extended family were still members of La Familia street gang. PSR at ¶59. The defendant's involvement in La Familia gang apparently returned to full membership when the defendant returned to jail. As the defendant admitted, he "felt it necessary to renew those connections during his current incarceration." *Id.* at Defense Objection #9.

As detailed in the PSR prepared by the Probation Office in advance of the April 2019 sentencing for the 2016 drug charges, on February 22, 2018 – just eighteen days before he threatened to murder AUSA Newhouse – the defendant and three fellow members of the La Familia street gang "renewed their connections" by ambushing two other inmates at Wyatt in

3

a premeditated beating. *See* Presentence Report dated January 31, 2019 at ¶7. During that attack, the defendant pummeled the victim as he lay unconscious on the floor, punching the motionless victim three times in the face. *Id*. The victim was transported to the hospital due to the extent of the injuries inflicted by the defendant and his associates.

Even more disturbing, the defendant's extreme violence has continued even after he threatened to murder AUSA Newhouse and his family. On January 9, 2019, the defendant and three other residents of his unit at Wyatt committed an unprovoked, four-against-one attack on a new detainee who just been assigned to their unit. PSR at ¶5. The defendant and his cohorts punched and kicked the victim until he fell to the ground. True to form, the defendant punched the victim several times in the face as the victim was on the ground until he was stopped by prison guards. The victim suffered significant injury requiring transportation to the hospital.

On January 17, 2019, the defendant was removed from Wyatt due to his violence and relocated to the Hampden County House of Corrections. PSR at ¶6. Just days later, on January 23, 2019, jail guards separated two inmates after they were involved in an altercation. As guards restrained one of the inmates involved, the defendant and another prisoner attacked the other inmate and began punching him until additional guards and restrained the defendant.

    **C.**    **The need for the sentence imposed**

As noted above, the sentence recommended by the government is intended to reflect the seriousness of the offense, to provide just punishment for the defendant's conduct, to promote respect for the law and afford adequate deterrence to criminal conduct, and to protect the public from the defendant's further crimes.

The seriousness of the offense and the need to provide the just punishment are inextricably woven when considering the appropriate sentence for this defendant. The

defendant's threats to murder AUSA Newhouse – and to murder his family – not only crossed the line from protected speech to illegal threats of violence. The words that he chose in threatening AUSA Newhouse went far beyond the pale, and evidence a malice and depravity that provide an unmistakable window into the defendant's character. The Court should impose a sentence that appropriately punishes both the bad act and the bad actor.

Similarly, the need to promote respect for the law and to provide adequate deterrence go hand-in-hand. AUSA Newhouse, and his fellow federal and state prosecutors throughout the country, are tasked with the responsibility of holding those who cannot or will not abide the law responsible for their actions. In many cases, those individuals – like the defendant before the Court – have long histories of violence and intimidation. In doing his or her job, every prosecutor is acutely aware of the potential risk of violence.

Here, the defendant threatened to murder AUSA Newhouse because the prosecutor fulfilled his responsibility to the public of holding the defendant accountable for his crimes. The sentence imposed by the Court should deliver a message loudly and clearly – that the courts will protect those men and women responsible for prosecuting crime in this district and in this country, and their families, from both actual violence and threats of violence. By doing so, the Court will not only deter this defendant but any other frustrated defendant who might consider unleashing his anger on a prosecutor simply doing his job.

Finally, the sentence imposed by the Court should protect the public from further crimes of this defendant. The violence that the defendant has engaged in to date is remarkable both in degree and frequency. Since 2006, this defendant has been convicted of armed assault with intent to murder, and has engaged in at least two unprovoked attacks in jail that have sent two victims to the hospital for treatment. There is nothing to suggest that the defendant was acting in

self-defense during any of the incidents. Indeed, in each case the defendant was in a group that outnumbered the victims, including a four-on-one attack on an inmate in January of this year. The defendant repeatedly beat a victim who was clearly unconscious, and at last two of the vicious attacks occurred after the conduct at issue before this Court. It is clear that the defendant either cannot control his anger or simply will not resist his desire to harm others. There does not appear to be anything short of incarceration that can reasonably assure the safety of the public from the danger posed by this defendant.

Accordingly, the government recommends that the Court impose a term of imprisonment of 84 months, to be served consecutively to the sentence that the defendant is presently serving.

**Response to Defendant's Objections to the Presentence Report**

<u>Defendant's Conduct is Not Related to Drug Charge</u>

On September 15, 2016, the defendant was indicted in U.S. District Court for distribution and possession with intent to distribute cocaine base.[2] The alleged conduct occurred on or about July 15, 2016.

Approximately 18 months later, on or about March 12, 2018, the defendant sent the subject letter threatening to murder Asst. U.S. Attorney Newhouse and his family. Nowhere in the letter did the defendant indicate that he wanted AUSA Newhouse to discontinue his involvement in the prosecution.

On March 15, 2019, Kevin O'Regan, then Chief of the Springfield Branch Office, contacted defense counsel and informed her of the letter. The following day, on March 16, 2018, investigators from the U.S. Marshal's Service met with defendant at Wyatt to discuss the letter.

---

[2] A superseding indictment was later issued amending the controlled substance to cocaine.

At that time, the defendant claimed that his intent in writing the letter was to have AUSA Newhouse removed from his case because "I will probably get 20 years but I don't want to [AUSA Newhouse] to have the satisfaction of giving it to me."

The defendant pled guilty on October 23, 2019. The Court held the sentencing hearing on April 3, 2019. During that sentencing, the Court specifically excluded consideration of the defendant's threat as relevant conduct and stated that it would not consider the conduct at all in its determination as to the appropriate sentence for the defendant.

Currently, in his objections to the PSR, the defendant again argues that his threats to murder Asst. U.S. Attorney Todd Newhouse "relates to the drug case for which Mr. Maldonado was sentenced in April [2019]" and, therefore, should be deemed relevant conduct. According to the defendant, any sentence imposed by the Court should be subject to application of USSG 5G1.3. That argument cannot withstand scrutiny.

As an initial matter, USSG 1B1.3 provides, in relevant part:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant …that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4) any other information specified in the applicable guideline

Thus, by a plain reading of USSG § 1B1.3, the defendant's request would require that that this Court find that the defendant's distribution of cocaine in 2016 "occurred during the commission of the [defendant's threats to murder AUSA Newhouse], in preparation for [his threats to murder AUSA Newhouse], or in the course of attempting to avoid detection or responsibility for [defendant's threats to murder AUSA Newhouse]," or was part of the same course of conduct or scheme as his threats to murder AUSA Newhouse.

Recognizing the illogical nature of that assertion, the defendant instead claims that the Court should remedy the alleged error of the district court in the April 3, 2019 sentencing by applying an obstruction of justice enhancement here, thereby increasing the defendant's total offense level by 2 levels. The defendant suggests that "while the guideline refers to conduct that obstructs the instant offense, its purpose would be best served by applying [the obstruction of justice enhancement] in this case." So, again by a plain reading, the defendant is suggesting that the Court find that the defendant obstructed the prosecution of him for threatening a federal law enforcement officer by threatening the federal law enforcement officer.

In fact, the defendant's threats to murder AUSA Newhouse and his family did not constitute relevant conduct to his conviction on the 2016 drug case – the threats were not made "during the commission of the [drug offense], in preparation for that [drug offense], or in the course of attempting to avoid detection or responsibility for that [drug offense]." To the extent that the defendant asserted four days after he sent the letter – upon reflection of what he had done and possibly after consulting with his attorney – that he made the threats with the intent to have AUSA Newhouse removed as the prosecutor, the Court need not credit that self-serving

8

explanation.³ Moreover, the defendant told investigators that he would probably get 20 years but just didn't want AUSA Newhouse to get the satisfaction of giving it to him. Thus, the defendant admitted that his threats were not made in an attempt to avoid detection or responsibility.

For that reason, the Probation Office correctly determined that the drug offense did not constitute relevant conduct and that USSG § 5G1.3(d) applied to any sentence imposed by the Court in this matter.⁴

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By: /s/ Greg A. Friedholm
    Greg A. Friedholm
    Assistant United States Attorney

Date: June 17, 2019

---

³ To the extent that the Court does credit the defendant's claim that he had sent the letter in a calculated effort to manipulate the judicial system and force AUSA Newhouse off the case, then the Court should not apply the USSG § 2A6.1(b)(6) four level reduction for "little or no deliberation," as recommended by the Probation Office in the draft PSR.

⁴ Defense counsel also argues in the objections to the PSR that a downward departure from the guideline range may be warranted "because the government's decision to wait to obtain an indictment in this case until after Mr. Maldonado was sentenced in the 2016 case unfairly deprived him of an opportunity to be sentenced in both cases at once." Surprisingly, defense counsel does not reference the Information filed by the government in this matter in June 2018, after the defendant indicated a desire to plead out both cases at once. Ultimately, the defendant failed to waive indictment and plead to the Information, and requested a trial on the drug charges, at which time the Information was withdrawn. Defense counsel's claim that the defendant was "deprived of an opportunity" to resolve both matters at the same time is simply not accurate.

**Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                              */s/ Greg A. Friedholm*
                                              Greg A. Friedholm
                                              Assistant United States Attorney

Date: June 17, 2019