<pre>
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3   _____

     UNITED STATES OF AMERICA,
 4

                        Plaintiff,          Criminal Action
 5                                          No. 19-30018-DJC
     V.
 6                                          May 22, 2019
     CARLOS MALDONADO,                      11:02 a.m.
 7

                        Defendant.
 8   _____

 9

10

11              TRANSCRIPT OF CHANGE OF PLEA

12         BEFORE THE HONORABLE DENISE J. CASPER

13              UNITED STATES DISTRICT COURT

14           JOHN J. MOAKLEY U.S. COURTHOUSE

15                   1 COURTHOUSE WAY

16                  BOSTON, MA  02210

17

18

19

20           DEBRA M. JOYCE, RMR, CRR, FCRR
                Official Court Reporter
21           John J. Moakley U.S. Courthouse
              1 Courthouse Way, Room 5204
22                  Boston, MA  02210
                 joycedebra@gmail.com
23

24

25
</pre>

1    APPEARANCES:

2    FOR THE GOVERNMENT:

3    GREG A. FRIEDHOLM, ESQ.
     United States Attorney's Office
4    Donahue Federal Building
     525 Main Street, Suite 206
5    Worcester, MA 01608
     508-368-0100
6
     FOR THE DEFENDANT:
7
     MIRIAM CONRAD, ESQ.
8    Federal Public Defender Office
     51 Sleeper Street
9    Fifth Floor
     Boston, MA 02210
10   617-223-8061

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1
2          (The following proceedings were held in open
3   court before the Honorable Denise J. Casper, United States
4   District Judge, United States District Court, District of
5   Massachusetts, at the John J. Moakley United States Courthouse,
6   1 Courthouse Way, Boston, Massachusetts, on May 22, 2019.
7          The defendant, Carlos Maldonado, is present with
8   counsel.  The Assistant U.S. Attorney is present.)
9          THE CLERK:  Court is in session.  Please be seated.
11:02 10        Criminal action 19-30018, United States v. Carlos
11   Maldonado.
12          Would counsel please state your name for the record.
13          MR. FRIEDHOLM:  Good morning, your Honor.  Greg
14   Friedholm on behalf of the United States.
15          THE COURT:  Good morning, counsel.
16          MS. CONRAD:  Good morning, your Honor.  Miriam Conrad
17   for Mr. Maldonado.
18          THE COURT:  Good morning, counsel.
19          Good morning, sir.
11:02 20        THE DEFENDANT:  Good morning.
21          THE COURT:  Counsel, sir, I know we're here for a
22   change of plea.  I did, however, see the note on the docket
23   that Mr. Maldonado may have entered a guilty plea that was
24   provisionally accepted by Judge Robertson subject to my full
25   colloquy.  Is that where we are?

|     |                                                                      |
| --- | -------------------------------------------------------------------- |
| 1   | MS. CONRAD:  That's correct, your Honor.                             |
| 2   | THE COURT:  So, counsel, I'm intending to proceed as I               |
| 3   | usually do.                                                          |
| 4   | MS. CONRAD:  Sure.                                                   |
| 5   | THE COURT:  Counsel, anything you need to be heard on                |
| 6   | before I proceed?                                                   |
| 7   | As I understand it, there's no plea agreement.                      |
| 8   | MR. FRIEDHOLM:  There is not.                                        |
| 9   | MS. CONRAD:  The only thing I would state for the                    |

11:02
```
 1          MS. CONRAD:  That's correct, your Honor.
 2          THE COURT:  So, counsel, I'm intending to proceed as I
 3     usually do.
 4          MS. CONRAD:  Sure.
 5          THE COURT:  Counsel, anything you need to be heard on
 6     before I proceed?
 7          As I understand it, there's no plea agreement.
 8          MR. FRIEDHOLM:  There is not.
 9          MS. CONRAD:  The only thing I would state for the
10     record is that Mr. Friedholm has represented that the
11     government will move for the third point for acceptance of
12     responsibility based on the timing of this plea.
13          The only other thing I will mention, which might be
14     premature, in light of the fact that Mr. Maldonado was recently
15     sentenced by Judge Mastroianni in Springfield, there is a very
16     thorough presentence report already prepared, so we would be
17     asking your Honor to proceed without a PSR, but not today.
18     We're asking for a date about four weeks out.
19          THE COURT:  With the idea that I would just review the
20     PSR that's previously been --
21          MS. CONRAD:  Right.  And then we would make our
22     presentations regarding the facts and the guideline
23     calculation.
24          THE COURT:  Okay.
25          Counsel, do you need to be heard on that at this time?
```

         1              MR. FRIEDHOLM:  No.  I would just note that the

         2    government will submit a statement of offense conduct that are

         3    specific to these particular charges that I assume would be

         4    added in or supplemented to the PSR that Ms. Conrad has

         5    referenced.

         6              THE COURT:  Understood.

         7              Counsel, with that said, Mr. Maldonado, you can take

         8    the witness stand.  Ms. Conrad, you're free to stand next to

         9    him.

11:04  10              (Defendant sworn in by the clerk.)

        11              THE CLERK:  Thank you.  Please be seated.

        12              THE COURT:  Good morning, again.

        13              THE DEFENDANT:  Good morning.

        14              THE COURT:  Mr. Maldonado, do you understand that

        15    you're now under oath and that if you answer any of my

        16    questions falsely, your answers could later be used against you

        17    in another prosecution for perjury or making false statements?

        18              THE DEFENDANT:  Yes, ma'am.

        19              THE COURT:  The reason I've had Ms. Conrad stand

11:04  20    beside you is if at any time during my questions to you you

        21    have a private question your counsel, let me know and I'll give

        22    you the opportunity to speak with her.  Okay?

        23              THE DEFENDANT:  Okay.

        24              THE COURT:  Sir, what is your full name?

        25              THE DEFENDANT:  Carlos Antonio Maldonado.

1          THE COURT:  How old are you?

2          THE DEFENDANT:  Thirty.

3          THE COURT:  How far did you go in school?

4          THE DEFENDANT:  Like, sixth grade.

5          THE COURT:  Was that here in the United States?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you a citizen of the United States?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Have you been treated recently for any

11:05 10  mental illness or psychiatric or psychological problem of any

11  kind?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  And I don't mean to pry, but,

14  again, all of these questions are about whether or not I should

15  take your guilty plea.  So can you tell me a little bit about

16  what treatment you've had recently?

17          THE DEFENDANT:  I go to mental health in the jail.  I

18  forgot her name, Nicki something.  I forgot her last name.  But

19  I don't take my medication or nothing.

11:05 20          THE COURT:  You don't take medication.

21          THE DEFENDANT:  I do -- I got them prescribed, but I

22  don't take them.

23          THE COURT:  So as you sit here now, you're not on any

24  medication?

25          THE DEFENDANT:  No.

             1          THE COURT:  And have you been treated recently for any

             2   drug addiction or drug problem or alcohol problem?

             3          THE DEFENDANT:  No.

             4          THE COURT:  You mentioned only going as far as sixth

             5   grade.  Have you had any kind of education beyond sixth grade?

             6          THE DEFENDANT:  No.

             7          MS. CONRAD:  One moment, please.

             8          THE COURT:  Sure.

             9          (Defendant conferred with counsel.)

    11:06 10          THE DEFENDANT:  I had some job training, like OSHA

            11   vocational stuff.

            12          THE COURT:  In your own words, do you know what

            13   today's hearing is about?

            14          THE DEFENDANT:  Plea hearing.

            15          THE COURT:  Okay.

            16          And what do you understand that to be?

            17          THE DEFENDANT:  I'm making myself guilty of the crime

            18   I'm being charged with.

            19          THE COURT:  And you indicated you're not taking any

    11:07 20   medication or you didn't take any medication today.

            21          THE DEFENDANT:  No.

            22          THE COURT:  Are you under the influence of any drug,

            23   prescription or otherwise, or any alcohol today?

            24          THE DEFENDANT:  No.

            25          THE COURT:  Do you understand the charge against you

1    in this case?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Let me just say for the record that you're

4    charged with making a threat to murder a federal law

5    enforcement officer in violation of Title 18, United States

6    Code, Section 115(a)(1)(B).  Do you understand that that's the

7    charge against you?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Have you had the opportunity to discuss

11:07 10   the charge against you and the facts and circumstances of your

11   case with your counsel, Ms. Conrad?

12             MS. CONRAD:  Yes.

13             THE COURT:  Ms. Conrad, I'll ask you:  Have you

14   communicated all formal offers from the government to accept a

15   plea on terms and conditions that may be favorable to your

16   client?

17             MS. CONRAD:  There are none, your Honor, other than

18   the representation about the acceptance of responsibility.

19             THE COURT:  Okay.

11:07 20             And, Mr. Maldonado, are you fully satisfied with the

21   counsel, representation, and advice given to you by your

22   counsel, Ms. Conrad?

23             MS. CONRAD:  Yes.

24             THE COURT:  Now, sir, I understand, as the government

25   has indicated, that you're pleading guilty with no plea

1  agreement with the government; is that correct?

2         THE DEFENDANT:  Yes, ma'am.

3         THE COURT:  Has anyone made -- other than what

4  Ms. Conrad represented to me about acceptance of

5  responsibility, has anyone made any promise or assurance to you

6  of any kind in an effort to get you to plead guilty in this

7  case?

8         THE DEFENDANT:  No, ma'am.

9         THE COURT:  Has anyone attempted in any way to force

11:08 10 you to plead guilty in this case?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  Do you understand that the offense to

13  which you are pleading guilty is a felony offense?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Do you understand if I accept your plea,

16  you'll be judged guilty of that offense?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that by being judged

19  guilty, you may lose valuable civil rights, including the right

11:08 20 to vote, the right to hold public office, the right to serve on

21  a jury, and the right to possess a gun or any kind of firearm?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Counsel, can you state the maximum

24  statutory penalties that apply here?

25         MR. FRIEDHOLM:  Yes.  Upon his conviction, the

1    defendant faces a maximum sentence of up to 10 years,

2    supervised release of up to three years, a maximum fine of up

3    to $250,000, and a special assessment of $100, your Honor.

4              THE COURT:  Thank you.

5              Sir, do you understand that I'll have the authority to

6    give you a term of imprisonment of up to 10 years?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Do you understand that, in addition to any

9    prison term, I'll also have the authority to give you a term of

11:09 10   supervised release of up to three years?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Do you understand that if you later

13   violate the conditions of your supervised release, you can be

14   given additional time in prison?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Do you understand I'll also have the

17   authority to fine you up to $250,000?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Do you understand that you'll also be

11:09 20   required to pay a $100 special assessment?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  And, counsel, does restitution apply here?

23             MR. FRIEDHOLM:  I don't think there's any restitution,

24   your Honor.

25             THE COURT:  Okay.  And I'm assuming forfeiture doesn't

1    either.

2              MR. FRIEDHOLM:  Yes, your Honor.

3              THE COURT:  Sir, do you understand all the possible

4    consequences of pleading guilty, that is, a term of

5    imprisonment, a term of supervised release, a fine, the

6    mandatory special assessment, and the loss of certain civil

7    rights that I mentioned to you?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  I now want to talk to you briefly about

11:10 10   the sentencing guidelines and how they apply in criminal cases.

11   These guidelines have been issued by the United States

12   Sentencing Commission for judges to consider when they

13   determine the sentence in a criminal case.  They are one of the

14   factors I need to consider when I decide what your sentence

15   should be.

16             Have you and Ms. Conrad talked about the guidelines

17   and how they might apply in your case?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Do you understand that I'll not be able to

11:11 20   determine your advisory guideline sentencing range until

21   Probation has in this case finalized its present report?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Do you understand -- and I imagine you do

24   from the prior matter before Judge Mastroianni, do you

25   understand that the presentence report contains information

1    about your background, the crime that you committed here, and

2    also contains a recommended application of the guidelines?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Do you understand that you and Ms. Conrad

5    and both sides will have the opportunity to review this report

6    and challenge the recommended application of the guidelines?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Do you understand that, as I suggested

9    before, although I'm not required to follow the advisory

11:11 10   guideline sentencing range, I am required to consider the

11   guidelines before I decide your sentence?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand under the current

14   guideline system I have the authority to depart or vary and

15   impose a sentence that might be more severe or less severe than

16   what the guidelines otherwise recommend?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  Do you understand that because I'm not

19   required to follow the guidelines, I have the legal authority

11:12 20   to sentence you anywhere up to the statutory maximum sentence,

21   here, as you heard, of 10 years, provided any sentence I impose

22   is reasonable under the facts and circumstances of your case?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Do you understand you will not be

25   permitted to withdraw your guilty plea because your sentence is

1   longer than what you might have expected?

2           THE DEFENDANT:  Yes.

3           THE COURT:  That is, even if you're unhappy with the

4   sentence I impose, you won't be permitted to withdraw your

5   guilty plea.

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Counsel, I'm assuming that there's a

8   statutory victim here; that is, the victim who would be

9   entitled to be heard at sentencing?

11:13 10        MR. FRIEDHOLM:  Yes, your Honor.

11          THE COURT:  Mr. Maldonado, do you understand that the

12  victim of your crime has the right to participate in the

13  sentencing, that is, either by submitting something in writing

14  or appearing here in person to address me?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Do you understand that you and the

17  government or both parties may have the right to appeal both

18  your conviction and any sentence I impose?

19          THE DEFENDANT:  Yes, ma'am.

11:13 20        THE COURT:  Mr. Maldonado, I now want to talk about a

21  number of important rights you give up by pleading guilty and

22  not going forward to trial.

23          Do you understand you have the right to plead not

24  guilty to the offense charged against you and to go to trial?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Do you understand that you have the right

2    to a trial by a jury?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you understand that at the trial you'd

5    be presumed to be innocent and the government would have to

6    prove your guilt beyond a reasonable doubt?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Do you understand that at the trial you'd

9    have the right to the assistance of counsel for your defense?

11:14 10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  Do you understand that you'd have the

12   right to see and hear all of the witnesses against you and have

13   them cross-examined in your defense?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Do you understand that you'd have the

16   right, if you chose to exercise it, to testify yourself and put

17   on evidence in your own defense?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  Do you understand that you'd have the

11:14 20   right to require witnesses to come to court to testify in your

21   defense?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Do you understand that you would have the

24   right to refuse to testify and refuse to put on any evidence

25   unless you voluntarily elected to do so?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Do you understand that if you decided not

3     to testify and not to put on any evidence at all, those facts

4     could not be used against you at trial?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that by entering a

7     guilty plea here today, if I accept your plea, there will be no

8     trial and you will have waived or given up your right to a

9     trial as well as all of the rights that I just described that

11:15  10  come with a trial?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  And, sir, you've understood all of the

13    questions I've asked?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And I just want to go back to one

16    question, and again, I don't mean to pry, but it's important

17    for me to have an understanding of this.

18         It's somewhat unusual here for education to stop in

19    sixth grade.  What was going on from sixth grade through when

11:15  20  you hit 18, if I can ask?

21         THE DEFENDANT:  I was in juvenile from age 11 to 17.

22         THE COURT:  And did you get any education or teaching

23    while you were there?

24         THE DEFENDANT:  We had school every day but I never

25    did anything.  I was always --

 1              THE COURT:  Okay.

 2              And I have not, Ms. Conrad, had the opportunity to see

 3    Mr. Maldonado's criminal history.  Has he previously had events

 4    in court, in adult Court?

 5              MS. CONRAD:  He has, your Honor.  He had a prior

 6    federal drug case in 2014, and he had a prior case in state

 7    court that is currently before the appeals court on appeal of a

 8    denial of a motion for new trial.

 9              THE COURT:  Okay.

11:16 10          MS. CONRAD:  I should say, your Honor, I just want to

11    flag this for the Court, that the PSR had Mr. Maldonado as a

12    career offender on the drug case, and Judge Mastroianni held

13    that he was not a career offender.

14              THE COURT:  Okay.

15              And the only reason I ask about criminal history,

16    Ms. Conrad, at this point is more about being familiar with the

17    process we're going through now.

18              MS. CONRAD:  Yes.  So this is actually the third --

19    will be the third time he's sentenced in a federal case.

11:17 20          THE COURT:  Right.

21              So, Mr. Maldonado, the questions I'm asking you now

22    are questions you've heard before.

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  And you understand the reason I'm asking

25    them is to determine whether or not I think you have made your

1   own independent choice about pleading guilty to this charge.

2   Do you understand that?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Counsel and Mr. Maldonado, you indicated

5   before you understood the charge against you, but let me just

6   repeat, you're charged here with a threat to murder a federal

7   law enforcement officer.  You understand that, correct?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  And you understand if this case had gone

11:17 10   to trial, the government would have to prove each and every

11   element of that charge beyond a reasonable doubt in order for

12   you to be found guilty.  Do you understand that?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  I'm now going to ask the government,

15   Mr. Friedholm, to give me a summary of the evidence the

16   government would have offered if the case against you went to

17   trial.

18           Mr. Maldonado, I want to you listen very carefully,

19   because when he's done, I'm going to ask you if you agree with

11:18 20   the summary.

21           Counsel.

22           MR. FRIEDHOLM:  Thank you, your Honor.

23           If I may just start, the elements the government would

24   need to prove to convict Mr. Maldonado are threats to murder a

25   federal law enforcement officer, first, that the defendant

threatened to assault, kidnap or murder or threaten to murder a

federal law enforcement officer, and that he did so with the

intent to impede, intimidate or interfere with such law

enforcement officer while he was engaged in the performance of

his official duties, or with the intent to retaliate against

such law enforcement officer on account of the performance of

his official duties.

Had this matter gone to trial, the government expects

that it would prove beyond a reasonable doubt the facts that

would be admitted were that in September of 2014, a federal

grand jury sitting in Springfield issued a four-count

indictment charging the defendant with distribution of heroin.

Assistant U.S. Attorney Todd Newhouse was responsible for

prosecuting that matter.

In January 2015, the defendant pled guilty to the

indictment and was sentenced to 16 months committed, followed

by three years of supervised release.

In September 2016, a federal grand jury in Springfield

again issued an indictment charging the defendant with

distribution of cocaine, a charge arising from the defendant's

drug sale while he was on supervised release.  Assistant U.S.

Attorney Todd Newhouse was again responsible for prosecuting

that matter.

Agents arrested the defendant on September 16th of

2016, and the magistrate court ordered that the defendant be

1    detained at the Wyatt detention facility while pending trial.

2    Ultimately, the District Court set a trial date for April 23,

3    2018.

4            Approximately one month before the trial date, on or

5    about March 14, 2018, Assistant U.S. Attorney Newhouse received

6    a letter addressed to him at the United States Attorney's

7    Office in Springfield.  The return address on the envelope

8    indicated that the defendant had mailed a letter from Wyatt and

9    included the defendant's inmate number.  The postage on the

11:20 10   envelope indicated that the letter was processed on or about

11   March 12th of 2018.

12           The one-page letter enclosed was handwritten in

13   Spanish.  The government obtained a certified translation of

14   the letter.

15           Your Honor, before I summarize the contents of the

16   letter, I just want to bring out two facts that the government

17   would bring out in order to understand the letter and the

18   circumstances of the letter.

19           First, Mr. Newhouse's mother, Patricia Welker, was a

11:20 20   crossing guard in West Springfield, Massachusetts.  In December

21   of 2014, a motorist struck and killed Ms. Welker while she was

22   acting in that capacity.

23           And second, Mr. Newhouse has two children.

24           Returning to the letter written by this defendant and

25   sent to Assistant U.S. Attorney Newhouse, the defendant stated

in that letter, in relevant part, quote, I am most glad that drunk killed your mother.  I am very glad she died in a lot of pain and in a violent manner.  I want to see you and your whole family dead but all dead in a violent way like your whore mother died in a lot of pain.  The rest of my life I will dedicate it to destroying your entire family and finally you. You are going to regret having destroyed my life.  I am going to make you pay for this.  Your entire family is going to die the same way or worse than your whore mother, may she burn in hell.

Those are excerpts from the March 12, 2018 letter.

On March 16, 2018, investigators from the U.S. Marshal's service met with the defendant at the Wyatt detention facility.  At that time, the defendant admitted that he wrote the letter to Assistant U.S. Attorney Newhouse, and he claimed that he desired to ruin Assistant U.S. Attorney Newhouse professionally and that his intent behind the letter was to hopefully have Mr. Newhouse removed as the prosecutor of his upcoming trial.

On or about April 5, 2018, the defendant sent a handwritten letter to the District Court in Springfield in which he admitted to writing the March 12, 2018 letter, and indicated that he did so because of the stress that he was experiencing.

Those are the relevant facts.

 1          THE COURT:  Thank you.

 2          Sir, you've heard a summary of the evidence that the

 3     government would have offered if the case against you went to

 4     trial.  Do you agree with the summary as to the essential

 5     elements of the charge against you?

 6          MS. CONRAD:  Your Honor, may I just confer with

 7     Mr. Maldonado for a moment?

 8          THE COURT:  Sure.

 9          (Defendant conferred with counsel.)

11:22 10          MS. CONRAD:  I just wanted to check.

11          THE COURT:  Okay.

12          So let me just put the question to you again.

13          You've heard the summary of the evidence the

14     government would offer if this case against you goes to trial.

15     Do you agree with the summary as to the essential elements of

16     the charge against you?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  That is, you did write this letter to

19     Mr. Newhouse as described?

11:23 20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Sir, are you pleading guilty today because

22     you're in fact guilty of the charge against you?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Any reason why I shouldn't take the change

25     of plea at this time, counsel?

 1            MR. FRIEDHOLM:  No, your Honor.

 2            THE COURT:  Ms. Conrad?

 3            MS. CONRAD:  No, your Honor.

 4            THE COURT:  Ms. Hourihan, you can take the change of

 5       plea.

 6            THE CLERK:  Mr. Maldonado, please stand.

 7            You've been named in a one-count indictment charging

 8       you in Count One with threat to murder a federal law

 9       enforcement officer in violation of Title 18, United States

11:23 10  Code, Section 115(a)(1)(B).  How do you now plead to Count One

11       of the indictment, guilty or not guilty?

12            THE DEFENDANT:  Guilty.

13            THE COURT:  You may be seated for the moment.

14            Sir, I find that you are fully competent and capable

15       of entering an informed plea, that you're aware of the nature

16       of the charge against you and the consequences of your plea,

17       that your guilty plea is a knowing and voluntary plea supported

18       by an independent basis in fact containing each of the

19       essential elements of the charge against you.  I, therefore, do

11:24 20  accept your plea, and you're now adjudged guilty of this

21       offense.

22            You can return to counsel table with Ms. Conrad.

23            (Pause.)

24            THE COURT:  Ms. Conrad, am I clear from what you said

25       at the outset and Mr. Friedholm's summary that the case before

1      Judge Mastroianni was fairly recently, meaning, was this --

2              MS. CONRAD:  Yes.  He was sentenced --

3              THE COURT:  The letter was in the context of the

4      prosecution that has recently resulted in a guilty plea?

5              MS. CONRAD:  Correct.

6              THE COURT:  So, meaning, that the personal information

7      in the PSR is recent.

8              MS. CONRAD:  Correct.

9              THE COURT:  Okay.

11:25 10        MS. CONRAD:  I think the PSR was finalized around

11     January, the sentencing was in April.

12             THE COURT:  Okay.

13             MS. CONRAD:  So I don't think there's been much change

14     in the personal information, other than everybody being a

15     little bit older.

16             THE COURT:  Okay.

17             So, Mr. Maldonado, what I usually say at this point is

18     about Probation beginning to put together the presentence

19     report.  Here, there's a fairly recent presentence report which

11:25 20   will assist me in determining the appropriate sentence.  As the

21     government has indicated, it's appropriate, obviously, for me

22     to have a summary of the offense conduct that was summarized

23     here in court, and there may be some other updates in regards

24     to your current incarceration that Probation may add.  But, at

25     any rate, sir, I will, as in the other case, have the

1    presence report to review.

2         Both Ms. Conrad on your behalf and Mr. Friedholm on

3    behalf of the government will have the opportunity to file

4    sentencing memos to give me their respective views on what the

5    appropriate sentence would be, and at the sentencing both you

6    and Ms. Conrad will have the opportunity to address me if you

7    choose to do so.

8         Ms. Hourihan, a date for sentencing?

9         THE CLERK:  June 19th at 11:00.

11:26 10       THE COURT:  Does that work, both sides?

11        MS. CONRAD:  Yes, your Honor.  Thank you.

12        MR. FRIEDHOLM:  That date is fine.  It's just with the

13   caveat I believe Mr. Rinaldi is the probation officer who would

14   be responsible.  At the arraignment he had indicated he would

15   likely stay with the case because he's the person most

16   familiar, so I say that with the caveat that Mr. Rinaldi has

17   enough time to prepare the supplemental PSR and the guideline

18   calculation.

19        MS. CONRAD:  I'm sorry, I'm just confused because I

11:27 20   thought we weren't going to do that.  I thought we were just

21   going to submit that directly.  Because in conferring with

22   Mr. Rinaldi, he had indicated that even though he'd already

23   done the interview and had all the personal information, in

24   fact, I had provided him with thousands of pages of prior

25   mental health records and so forth, as well as a summary of

1    those, that because of the internal review process it would

2    have to go through the review process, and I was hoping that we

3    could short circuit that by simply relying on the prior

4    presentence report and submitting anything regarding the facts

5    of this case and the guideline calculation directly to your

6    Honor.  So I thought that's how we were proceeding as opposed

7    to -- I understand if -- obviously, the Court would want to

8    have a probation officer present to confer about any details

9    about sentencing, but I just didn't want to hold things up.

11:28 10         THE COURT:  Right.  So I guess, counsel, what I

11   envisioned was, given that the PSR in terms of personal

12   background about Mr. Maldonado is fairly recent, I would

13   obviously want an update that's related to this case, both in

14   regards to the offense conduct and in regards to calculation of

15   the base offense level and the Criminal History Category, which

16   may not have changed much, which is what I would do,

17   Ms. Conrad, if -- in a situation which we were getting an

18   expedited PSR.

19         Counsel, did you contemplate anything else in that

11:28 20   regard?

21         MR. FRIEDHOLM:  No, I think it's exactly as your Honor

22   said, it would be an updated guideline calculation.  I believe

23   there may be an increase in his Criminal History Category based

24   on --

25         THE COURT:  The prior conviction.

1          Counsel, I'm inclined to set it for this date.  I'll

2    certainly reach out to Probation to make sure that this all can

3    happen and communicate what I've just communicated in terms of

4    what would be updated for this case.

5          MS. CONRAD:  So, just procedurally, your Honor, to the

6    extent that there are -- to the extent that Probation is going

7    to submit a guideline calculation, then we would have an

8    opportunity -- or we should submit objections to that directly

9    to Probation in the first instance as opposed to just

11:29  10   submitting those to your Honor?

11         THE COURT:  I don't have a strong view on that either

12   way.  I think there's enough time for that, counsel.

13         MS. CONRAD:  Okay.  I would propose if there isn't, I

14   would be fine with sort of shortening the objection period.  I

15   mean, the problem is that Mr. Maldonado currently is under a

16   sentence that he is serving, so to the extent that we're asking

17   for any concurrent time, time's a-wastin', if you will.

18         In addition, Mr. Maldonado currently is in segregation

19   in Wyatt.  He had been in general population when he was at the

11:30  20   Hampden County correctional facility, which is where he was

21   when he was sentenced by Judge Mastroianni.  Given

22   Mr. Maldonado's lengthy prior mental health history, which

23   dates back to when he was a very young child, being in

24   segregation is not a good situation for him, and I'm trying to

25   address that with Wyatt, but I just don't want to prolong the

1    process because of my concern for his well-being.

2           THE COURT:  Counsel, I think, like I said, June 19th

3    will work.  I'll certainly convey having that date move forward

4    with Probation.  At least as I sit here now I don't see any

5    issue with that date based on anything either side has said to

6    me, and, given the limits of what we're asking Probation to do,

7    I think this is workable.  Okay.

8           Counsel, anything else I should address now?

9           MR. FRIEDHOLM:  No, your Honor.  Thank you.

10          THE COURT:  Ms. Conrad.

11          MS. CONRAD:  No, your Honor.  Thank you.

12          THE COURT:  Thank you.

13          THE CLERK:  All rise.

14          (Court adjourned at 11:31 a.m.)

15                  - - - - - - - - - - - -

16                        CERTIFICATION

17          I certify that the foregoing is a correct transcript

18   of the record of proceedings in the above-entitled matter to

19   the best of my skill and ability.

20

21

22

23   /s/Debra M. Joyce_____          July 1, 2019_____
     Debra M. Joyce, RMR, CRR, FCRR     Date
24   Official Court Reporter

25